## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MARY J. KEMP**                                              **CIVIL ACTION**

**VERSUS**                                                    **CASE NO. 14-0944**

**UNUM LIFE INSURANCE COMPANY OF**                            **SECTION: "G" (3)**
**AMERICA**

### ORDER

Plaintiff Mary J. Kemp, together with Defendant Unum Life Insurance Company of America ("Unum"), moves the Court to preliminarily approve a class action settlement pursuant to Federal Rule of Civil Procedure 23. Before the Court is the parties' joint "Motion to Preliminarily Approve the Class Settlement, Conditionally Certify the Settlement Class, Direct Notice to the Class, and Schedule a Final Approval Hearing."[1] Having considered the motion, the memorandum in support, the record, the statements made and evidence presented at the May 29, 2015 hearing, the proposed Settlement Agreement,[2] the proposed Notice to Class Members,[3] and the applicable law, the Court will grant the motion.

### I. Background

#### A.   *Factual Background*

Mary Kemp worked as a sales associate for Humana, Inc. ("Humana") from 2006 until June 2012, when she was forced to stop working due to a disability. She applied for short and long term disability benefits under a group plan offered by Humana for its employees. Humana purchased a

_____

[1] Rec. Doc. 32.

[2] Rec. Doc. 32-6.

[3] Rec. Doc. 46.

1

group insurance policy (the "Policy"), issued on May 1, 2012, from Unum to fund the long term disability plan. Unum retained discretionary authority to make benefit determinations, including determining "the amount of benefits" under the Policy. After receiving short-term disability benefits for the maximum benefit period, Kemp applied for long-term disability benefits. In January 2013, Unum approved her claim and paid her benefits for several months. Unum terminated her benefits on May 6, 2013.

In this lawsuit, Kemp contests both the denial of her disability benefits and also the amount that Unum had been paying her each month. The pending class settlement resolves only the latter claim. Kemp alleges that the amount of her disability benefit was too low because "perpetuity payments" – a set amount paid by Humana to Kemp each month for so long as customers to which she sold certain insurance products remained with Humana – were not included as "monthly earnings" when Unum calculated her benefit amount. Kemp argues that these perpetuity payments should have been included in the calculation of her benefit amount because they fall within the Policy's definition of "monthly earnings," as follows:

> Monthly earnings means your total income in effect just prior to your date of disability. It is before taxes and any deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account. It includes your gross targeted sales incentive, divided by 12. It does not include income received from commissions, bonuses, overtime pay, shift differential, and any other extra compensation or income received form sources other than your Employer.

Specifically, Kemp contends that an ordinary reading of "total income" includes perpetuity payments, and that perpetuity payments do not qualify as any of the excluded categories.

B.       *Procedural Background*

Kemp filed this lawsuit on April 25, 2014.[4] Pursuant to Local Rule 23(B)(1), which requires the filing of a motion for class certification within 91 days of filing the complaint, Kemp filed a motion for class certification on July 21, 2014.[5] Unum filed an opposition to the motion for class certification on September 9, 2014.[6]   The parties participated in a ten-hour mediation on December 5, 2014, wherein they agreed on the material terms of a settlement, subject to confirmation of data provided by Unum regarding Unum's method of calculating disability benefits.[7]

On February 10, 2015, the parties filed a joint "Motion to Withdraw Document Class Certification Motion,"[8] which the Court granted on February 12, 2015.[9]  Also on February 10, 2015, the parties filed the pending joint "Motion to Preliminarily Approve the Class Settlement, Conditionally Certify the Settlement Class, Direct Notice to the Class, and Schedule a Final Approval Hearing."[10]

On May 29, 2015, the Court held a preliminary certification hearing on the pending motion. At the hearing, the Court expressed concern with respect to the proposed opt-out procedure, which instructed putative class members wishing to opt-out of the settlement class to mail their objections

---

[4] Rec. Doc. 1.

[5] Rec. Doc. 12.

[6] Rec. Doc. 17.

[7] Rec. Doc. 32-1 at p. 7.

[8] Rec. Doc. 34.

[9] Rec. Doc. 41.

[10] Rec. Doc. 32.

3

directly to the Court.[11] Since the Court has no procedure for collecting and filing such documents, the parties agreed that opt-out class members will instead mail their objections to the attorneys in this case. Kemp filed a revised proposed Notice to the Settlement Class[12] and a revised proposed Order[13] reflecting those changes.

### C.     The Proposed Settlement Agreement

#### 1.     The Proposed Settlement Class

The proposed settlement agreement defines the Settlement Class as:

All current or former Humana employees who (1) received long-term disability benefits from Unum under the Policy; (2) became disabled within the meaning of the Policy between and including May 1, 2002, and October 31, 2013; (3) received Perpetuity Payments from Humana; and (4) whose long-term disability benefit payment amount was calculated without including Perpetuity Payments as Monthly Earnings as defined in the Policy.

Excluded from this Settlement Class are all individuals and entities who have executed a release of claims on or before April 24, 2014, and all individuals and entities who submit timely and valid requests to be excluded from the Settlement Class pursuant to the terms of this Settlement Agreement and the Court's Preliminary Approval Order.[14]

"Perpetuity payments" is defined as "the payments made to certain Humana employees for each month that a member to whom the employee sells a Medicare Advantage or Medicare Prescription Drug Plan remains active."[15] The "Policy" is defined as "the group insurance policy, No. 137513 001, issued on May 1, 2002 by Unum to Humana to fund a portion of Humana's ERISA welfare

---

[11] Rec. Doc. 45.

[12] Rec. Doc. 46.

[13] Rec. Doc. 46-1.

[14] Rec. Doc. 32-6 at ¶ 3.1.

[15] *Id.* at ¶ 1.16.

benefit plan, as amended from time to time."[16]

### 2.      The Settlement Agreement

Under the terms of the proposed Settlement Agreement, each class member will receive (1) his or her Back Benefit Settlement Amount, (2) plus his or her Future Benefit Monthly Settlement Amount for so long as he or she remains disabled within the meaning of the Policy, (3) less an allocation of (a) any attorneys' fees and expenses approved by the Court and (b) any service award approved by the Court.[17] Stated differently, for each month that he or she received benefits in the past and each month that he or she receives benefits in the future, half of the benefit increase that would result from inclusion of perpetuity payments as monthly earnings when calculating his or her monthly benefit, plus interest at ten percent on back benefits, less an allocation of any attorneys' fees, costs, and expenses, and/or service awards approved by the Court. All class members will receive payment by check within 30 days of the effective date of the Settlement Agreement for payments due under the agreement, for the period up to and including the effective date.[18]

Attorneys' fees for class counsel and expenses will be calculated as a percentage of the Settlement amount, of up to one third of the Settlement Amount.[19] Additionally, class counsel seeks approval of a service award of $5,000 to the class representative, to be paid out of the Settlement Amount.[20]

The Agreement provides that it is intended to forever and completely release Unum from all

---

[16] *Id.* at ¶ 1.20.

[17] *Id.* at ¶ 4.1.

[18] *Id.* at ¶ 9.1.

[19] *Id.* at ¶ 4.2.

[20] *Id.* at ¶ 4.3.

"Released Claims," which are defined as:

> any and all past and present claims, actions, causes of action, rights or liabilities, known or Unknown, based on, arising out of, or in any way relating to inclusion or not of Perpetuity Payments when calculating the amount of the long-term disability benefits under the Policy. Without limiting the generality of the foregoing, the Released Claims include all claims, actions, rights or causes of action arising under the statutory or common law applicable to Settlement Class Members that were raised or could have been raised in this litigation, including any claims of violations of ERISA or state law, intentional wrongdoing, fraud, and/or breach of fiduciary duty. "Released Claims" do not include claims for improper denial or termination of benefits under ERISA § 502(a)(1)(B), except to the extent that any such claim seeks an increased benefit due to the inclusion or not of perpetuity payments when calculating the benefit amount.[21]

### 3.      Plan of Notice

Pursuant to the terms of the Settlement Agreement, the parties have selected and Unum has retained Rust Consulting, Inc., a class action notice expert, to serve as the Notice Administrator and the Settlement Administrator for this Settlement.[22] Unum is responsible for paying all costs and fees associated with Class Notice and Settlement Administration.[23] Within 28 days from the date of the Preliminary Approval, the Settlement Administrator will send to all Settlement Class Members class notices by first class U.S. mail to the person's last known address as it appears in Unum's records, as updated by the Settlement Administrator.[24] The proposed Notice includes a description of the Settlement, a date by which members of the Settlement Class may exclude themselves from, or "opt out" of the Settlement Class, a date by which the class members may object to the settlement, the date of the final approval hearing, and the address of the settlement website, at which class members

---

[21] *Id.* at ¶ 1.22.

[22] Rec. Doc. 32-1 at p. 9; Rec. Doc. 32-6 at ¶ 5.1.

[23] Rec. Doc. 32-6 at ¶ 5.1.

[24] *Id.* at ¶ 5.4.

may access the Agreement and other related documents and information.[25]

## II.  Class Certification

### A.    *Legal Standard*

The certification requirements of Federal Rule of Civil Procedure 23 generally apply when certification is for settlement purposes.[26] A district court need not consider "whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."[27] But the Court's consideration of the other factors in Rule 23 is of "vital importance" since the court will lack a later opportunity to make adjustments to the class.[28] The existence of a settlement class may even "warrant more, not less, caution on the question of certification."[29]

To be certified under Rule 23, the class must first  satisfy four threshold requirements. A court may certify a class only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.[30] The party seeking certification bears the burden of establishing these requirements.[31]

If the prerequisites of Rule 23(a) are met, the proposed class must additionally satisfy one

---

[25] Rec. Doc. 32-1 at p. 10; Rec. Doc. 46.

[26] *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

[27] *Id.* at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)).

[28] *Id.*

[29] *Id.*

[30] Fed. R. Civ. P. 23(a).

[31] *Unger v. Amedisys*, 401 F.3d 316, 320 (5th Cir. 2005) (citing *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479–80 (5th Cir. 2001)).

of the three provisions for certification under Rule 23(b). For certification of a 23(b)(3) damages class, as in this case, the district court must make a finding that (1) questions of law or fact common to class members predominate over questions affecting only individual members ("predominance") and (2) that a class action is the best way to adjudicate the controversy ("superiority").[32]

In addition, a court that certifies a class must also appoint class counsel.[33] In appointing class counsel, the Court must consider: (a) the work counsel has done in identifying or investigating potential claims in the action; (b) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (c)  counsel's knowledge of the applicable law; and (d) the resources that counsel will commit to representing the class.[34]

Finally, if the proposed class meets the foregoing requirements, the district court has discretion to approve a settlement that it determines is fair, reasonable, and adequate within the meaning of Rule 23(e)(2).[35] The Fifth Circuit has instructed that the court should consider the following six factors when determining whether to approve a settlement agreement resolving a class action suit: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.[36]

---

[32] Fed. R. Civ. P. 23(b)(3); *Unger*, 401 F.3d at 320.

[33]  Fed. R. Civ. P. 23(g).

[34] Fed. R. Civ. P. 23(g)(1)(A).

[35] Fed. R. Civ. P. 23(e)(2) ("If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.").

[36] *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) (citations omitted).

**B.      Analysis**

**1.      Rule 23(a) requirements**

**a.      Numerosity**

Rule 23(a)(1) requires that the class be so large that joinder of all members is impracticable. To satisfy the numerosity requirement, "a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members."[37]  A mere allegation that the class is too numerous to make joinder practicable is insufficient.[38]  Here, class counsel represents that the Settlement Class consists of 109 putative class members located nationwide.[39] Although the number of members in a proposed class is not determinative of whether joinder is impracticable, it has been noted that any class consisting of more than forty members "should raise a presumption that joinder is impracticable."[40] Thus, the Court finds that Plaintiff satisfies the numerosity requirement.

**b.      Commonality**

The commonality test of Rule 23(a)(2) requires that the class members "have suffered the same injury," which can be satisfied by "an instance of the defendant's injurious conduct, even when the resulting injurious effects – the damages – are diverse."[41] The principal requirement of commonality  is that class members raise "at least one contention that is central to the validity of

---

[37] *Pederson v. Louisiana State University*, 213 F.3d 858, 868 (5th Cir. 2000) (quoting *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981)).

[38] *Id.* (citing *Fleming v. Travenol Laboratories, Inc.*, 707 F.2d 829, 833 (5th Cir. 1983)).

[39] Rec. Doc. 32-1 at p. 14.

[40] *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (citing Newberg on Class Actions § 3.05).

[41] *In re Deepwater Horizon*, 739 F.3d 790, 810–11 (5th Cir. 2014); *see also Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).

each class member's claims."[42] This "common contention" "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[43] Thus, "[w]hat matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers."[44] "These 'common answers' may . . . relate to the injurious effects experienced by the class members, but they may also relate to the defendant's injurious conduct."[45] While "even a single common question" will satisfy the Rule 23(a)(2) commonality requirement, the Rule 23(b)(3) predominance inquiry "is more demanding."[46] Because "[p]laintiffs cannot satisfy Rule 23(b)(3)'s predominance requirement without satisfying Rule 23(a)'s commonality requirement," the Court combines its commonality analysis with its predominance analysis, *infra*.[47]

### c.  Typicality

Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." The test for typicality is not demanding, and it focuses on the

---

[42] *Id.* at 810.

[43] *Wal–Mart Stores*, 131 S.Ct. at 2551.

[44] *Id.*

[45] *In re Deepwater Horizon*, 739 F.3d at 811 (quoting *Wal–Mart Stores*, 131 S.Ct. at 2556).

[46] *Ahmad v. Old Republic Nat. Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012) (quoting *Wilborn v. Wells Fargo Bank, N.A.*, 609 F.3d 748, 755 (5th Cir. 2010)).

[47] *Id.*; see also *id.* at 705 n. 25 (noting that the commonality requirement is "subsumed under, or superseded by, the more stringent Rule 23(b)(3) [predominance] requirement" (quoting *Amchem Prods.*, 521 U.S. at 609)); *see also In re Pool Products Distribution Mkt. Antitrust Litig.*, 2014 WL 7407492, at *7 (E.D. La. Dec. 31, 2014) (Vance, J.) (combining the commonality analysis and the predominance analysis in granting preliminary certification of a settlement class).

10

general similarity of the legal and remedial theories behind plaintiffs' claims.[48]  Thus, "many courts

have found typicality if the claims or defenses of the representatives and the members of the class

stem from a single event or a unitary course of conduct, or if they are based on the same legal or

remedial theory."[49] Here, the class representative is the same as the plaintiff named in the complaint:

Mary J. Kemp.[50] The claims advanced by Kemp are identical to those available to every putative

class member because all putative settlement class members were subjected to the same Unum

practices and have suffered the same injuries.[51]  Specifically, all putative class members allegedly

received long-term disability benefit payments which excluded perpetuity payments as monthly

earnings, as defined in the Policy.[52] The Court finds that the representative's claims are typical of

the claims of the putative settlement class members.

### d.    Adequacy

Rule 23(a) also requires that the representative parties must "fairly and adequately protect

the interests of the class." "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts

of interest between named parties and the class they seek to represent."[53] Class representatives "must

be part of the class and possess the same interest and suffer the same injury as the class members."[54]

---

[48] *Shipes v. Trinity Inds.*, 987 F.2d 311, 316 (5th Cir. 1993); *Lightbourn v. Cnty. of El Paso, Tex.*, 118 F .3d 421, 426 (5th Cir. 1997); *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).

[49] 7A Wright & Miller, Federal Practice and Procedure § 1764 (2014).

[50] Rec. Doc. 32-1 at p. 16.

[51] *Id.*

[52] *See* Rec. Doc. 32-6 at ¶ 3.1.

[53] *Amchem Prods.*, 521 U.S. at 625 (citing *Falcon*, 457 U.S. at 158 n. 13).

[54] *Id.* at 625–26 (citations and internal quotation marks omitted).

11

The adequacy requirement "also factors in competency and conflicts of class counsel."[55] Here, as discussed in the Court's analysis of typicality, the interests of the proposed class representatives are aligned with the interests of the class, as they raise identical claims as all other plaintiffs. Thus, the Court sees no conflict of interest between the proposed settlement class representatives and the settlement class.

In addition, the parties have nominated class action counsel with experience in complex ERISA claims.[56] The parties have nominated Reagan L. Toledano, James F. Willeford, and Shane D. Pendley of the law firm Willeford & Toledano as class counsel. At the May 29, 2015 hearing on the pending motion, Mr. Toledano represented that he has significant experience litigating long-term disability and ERISA claims, and that he has investigated the claims brought in this lawsuit He also stated that his firm has committed significant time and resources toward this litigation, including hiring experts and assigning several attorneys to this case. The Court finds that the class counsel is knowledgeable about the applicable law, has significant experience handling class actions and complex litigation involving the types of claims asserted here, and is willing to commit significant time and resources to representing the class. Accordingly, the adequacy requirement of Rule 23(a) is satisfied here.

## 2.    Rule 23(b) requirements

For class actions seeking money damages, as here, Rule 23(b)(3) imposes two prerequisites: predominance and superiority. Specifically, "questions of law or fact common to the members of the class [must] predominate over any questions affecting only individual members, and . . . a class

---

[55] *Id*. at 626 n. 20.

[56] Rec. Doc. 32-1 at p. 17; *see also* Rec. Doc. 32-5 at p. 5.

action [must be] superior to the other available methods for the fair and efficient adjudication of the controversy."[57]

### a.    Predominance

As stated above, the Court combines its analyses of commonality under Rule 23(a)(2) and predominance under Rule 23(b). While a single common question will satisfy commonality, to satisfy predominance, "common issues must constitute a significant part of the individual cases."[58] "This requirement, although reminiscent of the commonality requirement of Rule 23(a), is 'far more demanding' because it 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"[59]

In order to make a "meaningful determination" of whether an allegedly common contention satisfies commonality, a district court must "look beyond the pleadings to 'understand the claims, defenses, relevant facts, and applicable substantive law.'"[60] Specifically, a district court should analyze how resolution of an allegedly common question of law or fact will decide an issue central to an element or defense of each of the class members' claims at once.[61] To satisfy 23(b)(3), plaintiffs almost certainly must be able to establish injury using common proof.[62] Similarly, to determine whether the class claims meet the predominance requirement, the court must "identify the

---

[57] Fed. R. Civ. P. 23(b)(3).

[58] *Mullen*, 186 F.3d at 626.

[59] *Unger*, 401 F.3d at 320 (quoting *Amchem Prods.*, 521 U.S. at 623–24).

[60] *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 841 (5th Cir. 2012) (quoting *McManus v. Fleetwood Enterprises, Inc.*, 320 F.3d 545, 548 (5th Cir. 2003)).

[61] See *id.* at 841–42.

[62] *See State of Ala. v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 324 (5th Cir. 1978) ("[I]f generalized proof of impact is in fact improper, then the district court must carefully consider whether this requirement of individual proof does not defeat the class certification on either predominance or manageability grounds.")

substantive issues that will control the outcome, assess[ ] which issues will predominate, and then determin[e] whether the issues are common to the class."[63] The requirement that "a court know which law will apply before making a predominance determination is especially important when there may be differences in state law."[64]

Here, the parties represent that the liability questions common to all members of the Settlement Class substantially outweigh any possible issues that are individual to each member of the putative Settlement Class.[65] For example, each potential class member's claim for an increase in the amount of their disability benefits results from Unum's across-the-board decision not to include perpetuity payments when calculating each class members' disability benefit, as well as Unum's failure to increase their benefits after this Court ruled in a previous case that perpetuity payments should be included in the disability benefit calculation.[66] Accordingly, the putative class members have a single theory of injury: Unum failed to include perpetuity payments in the calculation of their disability benefits. The Court additionally notes that although the putative class represents a nation-wide class, the parties do not dispute that this case is governed by ERISA, not state law. Accordingly, there are no "variations in state law [that] may swamp any common issues and defeat predominance,"[67] nor are there any conflict of laws issues here. The Court concludes that common issues predominate. It follows that the Rule 23(a)(2) commonality requirement is satisfied as well.

---

[63] *Bell Atl. Corp. v. AT & T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003).

[64] *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996) (citation omitted).

[65] Rec. Doc. 32-1 at p. 17.

[66] *See Surratt v. Unum Life Ins. Co. of Am.*, 2013 WL 4648460, at *1 (E.D. La. Aug. 29, 2013).

[67] *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724 (5th Cir. 2007) (quoting *Castano*, 84 F .3d at 741).

### b.      Superiority

The Court finds that a class action is superior to other methods of adjudicating this case. As

the Supreme Court has explained:

> The policy at the very core of the class action mechanism is to overcome the problem
> that small recoveries do not provide the incentive for any individual to bring a solo
> action prosecuting his or her rights. A class action solves this problem by
> aggregating the relatively paltry potential recoveries into something worth
> someone's (usually an attorney's) labor.[68]

That logic applies here, where the amount at stake for any individual plaintiff would likely not make

individual litigation worth the time, money, or effort. Certifying the settlement class allows the

claims of many Policy beneficiaries to be resolved efficiently at one time.

### 3.      Rule 23(g)

Certifying a settlement class also requires appointing class counsel.  Plaintiff nominates as

lead counsel Reagan L. Toledano, James F. Willeford, and Shane D. Pendley of Willeford &

Toledano as counsel for the settlement class. For the reasons discussed in the Court's analysis of

adequacy, *supra*, these attorneys are an appropriate choice.

### III. Preliminary Fairness Determination

### A.      *Legal Standard*

Federal Rule of Civil Procedure 23 governs the settlement of class actions.[69] A class action

may not be dismissed or compromised without the district court's approval.[70]  The Court must

---

[68] *Amchem Products, Inc.*, 521 U.S. at 617 (citation omitted).

[69] See *Henderson v. Eaton*, No. Civ. A. 01–0138, 2002 WL 31415728, *2 (E.D. La. 2002) (citing *Pearson v. Ecological Science Corp.*, 522 F.2d 171, 176–77 (5th Cir. 1975)).

[70] See Fed. R. Civ. P. 23(e); see also *Cope v. Duggins*, 203 F.Supp.2d 650, 652–53 (E.D. La. 2002) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

"ensure that the settlement is in the interests of the class, does not fairly impinge on the rights and interests of dissenters, and does not merely mantle oppression."[71] Because the parties' interests are aligned in favor of a settlement, the Court must take independent steps to ensure fairness in the absence of adversarial proceedings.[72] The Court's duty of vigilance does not, however, authorize it to try the case in the settlement hearings.[73]

As this motion is for preliminary approval of a class action settlement, the standards are not as stringent as those applied to a motion for final approval.[74] If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval.[75]

**B.    Analysis**

The Court finds no reason to doubt the fairness of the processes by which the parties arrived at the preliminary settlement agreement. The parties arrived at the settlement agreement following

---

[71] *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (quoting *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978)).

[72] *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279–80 (7th Cir. 2002) (noting that the class action context "requires district judges to exercise the highest degree of vigilance in scrutinizing proposed settlements."); see also Manuel for Complex Litigation (Fourth) § 21.61 (2004).

[73] *Cotton*, 559 F.2d at 1330.

[74] *In re Pool Products Distribution Mkt. Antitrust Litig.*, MDL 2328, 2014 WL 7407492, at *12 (E.D. La. Dec. 31, 2014) (Vance, J.) (citing *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007); Manuel for Complex Litigation § 21.63 ("At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval.").

[75] See *In re Stock Exchanges Options Trading Antitrust Litig.*, 2005 WL 1635158, at *5 (S.D.N.Y. July 8, 2005); *McNamara v. Bre–X Minerals Ltd*, 214 F.R.D. 424, 430 (E.D.Tex.2002).

16

a ten-hour mediation under the supervision of an experienced mediator.[76] There is no indication that counsel for all parties are not experienced and familiar with the factual and legal issues in the case. In addition, the settlement does not appear to give preferential treatment to the lead plaintiff or any segment of the class.

Next, the Court has studied the "Released Claims" provision in the settlements and finds it reasonable. The Court finds that the release of unknown claims is not impermissibly broad. Courts have consistently approved releases in class action settlements that discharge unknown claims relating to the factual issues in the complaint.[77]  Since these releases apply only to unknown claims arising from the facts related to this Action, the Court does not see any obvious deficiency with the release.

The Court turns now to the economic fairness of the settlements and finds that the settlement amounts are within the range of approval.  The proposed notice form indicates that class counsel plan to seek an award for attorneys' fees, costs, and expenses in the amount of one-third of the total fund. The Court reserves judgment on final approval of costs and/or fees until presented with a request by class counsel. For purposes of preliminary approval, however, the Court finds that a sum for the attorneys' fees and costs of one-third of the settlement fund is in keeping with practice in this

---

[76]  Rec. Doc. 32-1 at p. 21.

[77] *See  In re Pool Products Distribution Mkt. Antitrust Litig.*, MDL 2328, 2014 WL 7407492, at *12 (E.D. La. Dec. 31, 2014) (Vance, J.); *DeHoyos v. Allstate Corp.*, 240 F.R .D. 269, 311–12 (W.D.Tex. 2007) (finding that release of unknown claims was not impermissibly broad)*; In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 221 (5th Cir. 1981) ("a court may release not only those claims alleged in the complaint and before the court, but also claims which could have been alleged by reason of or in connection with any matter or fact set forth or referred to in the complaint") (internal citations omitted); *Zandford v. Prudential–Bache Sec., Inc.*, 112 F.3d 723, 727 (4th Cir.1997) (noting that general releases are intended to "settle all matters forever" including "claims of every kind or character, known or unknown") (internal citations omitted).

Circuit and is therefore within the limit of what the Court deems reasonable.[78]

Finally, "[t]he settlement terms should be compared with the likely rewards the class would have received following a successful trial of the case."[79] In making this comparison, "[p]ractical considerations may be taken into account."[80] "Proof difficulties" are "permissible factors" for a court to consider when evaluating the fairness of a settlement.[81] In addition, "particularly in class action suits, there is an overriding public interest in favor of settlement," partly because "[i]t is common knowledge that class action suits have a well deserved reputation as being most complex."[82]

Applying these principles, the Court considers the merits of the settlement "in light of the universe of potential damages in this case, balanced against the risks present in this particular litigation."[83] The proposed settlement provides immediate monetary relief to the class. As stated above, under the terms of the proposed Agreement, each class member will receive (1) his or her Back Benefit Settlement Amount, (2) plus his or her Future Benefit Monthly Settlement Amount for so long as he or she remains disabled within the meaning of the Policy, (3) less an allocation of (a) any attorneys' fees and expenses approved by the Court and (b) any service award approved by the Court.[84] The Court finds that this figure reflects a best-case scenario for plaintiffs' actual damages.

---

[78] *See, e.g., Burford v. Cargill, Inc.*, 2012 WL 5472118 (W.D. La. Nov. 8, 2012) (33.33% approved); *Jenkins v. Trustmark Nat. Bank*, 2014 WL 1229661 (S.D. Miss. Mar. 25, 2014) (33.33% approved; "[I]t is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third.").

[79] *Cotton*, 559 F.2d at 1330.

[80] *Id.*

[81] *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 240 (5th Cir. 1982).

[82] *Cotton*, 559 F.2d at 1331.

[83] *In re Pool Products Distribution Mkt. Antitrust Litig.*, WL 7407492, at *15 (E.D. La. Dec. 31, 2014).

[84] Rec. Doc. 32-6 at ¶ 4.1.

## IV. Notice

### A.    *Content of the Notice*

Federal Rule of Civil Procedure 23(c)(3) governs the notice requirements for class certification. Specifically, the notice must state:

    (i)      the nature of the action;

    (ii)     the definition of the class certified;

    (iii)    the class claims, issues, or defenses;

    (iv)    that a class member may enter an appearance through an attorney if the member so desires;

    (v)     that the court will exclude from the class any member who requests exclusion;

    (vi)    the time and manner for requesting exclusion; and

    (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).[85]

After reviewing the proposed notice,[86] the Court finds that the notice meets the requirements of Rule 23(c)(3). The plain language of the notice apprises all class members of the nature of the action, the definition of the class, the class claims and the defenses, the class members' right to be heard, the class members' right to exclusion, and the binding effect of a class judgment. The notice also disclose the amount of settlement, a statement of attorneys' fees sought, and the reasons for settlement. The notice also provides additional details such as the name and contact information of counsel and the time and manner for requesting exclusion. Moreover, the notices use clear headings and utilize plain language. Accordingly, the Court finds that the content of the notice is sufficient

---

[85] Fed. R. Civ. P. 23(c)(3)(B).

[86] Rec. Doc. 46.

19

pursuant to Rule 23(c)(3).

**B.     Method of Notice**

Under Rule 23(e)(1), when approving a class action settlement, the district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." In addition, for classes certified under Rule 23(b)(3), courts must ensure that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified by reasonable effort."[87]  The Due Process Clause also gives unnamed class members the right to notice of the settlement of a class action.[88]  The notice must be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[89]  Still, "the type of notice to which a member of a class is entitled depends upon the information available to the parties about that person."[90]  Thus due process does not require actual notice to all class members who may be bound by the litigation.[91]

Here, the parties propose mailing hard-copy notices to all class  members for whom they have a valid address from Unum's records. Specifically, Rust Consulting, the proposed Settlement Administrator, will oversee the sending of the direct mail notices to the 109 putative class members. Rust Consulting will compile the addresses of the putative class members by using Unum's records,

---

[87] Fed. R. Civ. P. 23(c)(2)(B).

[88] *Fidel v. Farley,* 534 F.3d 508, 513–14 (6th Cir. 2008) (citing *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 943–44 (10th Cir. 2005)).

[89] *DeJulius,* 429 F.3d at 944 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).

[90] *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1098 (5th Cir.1977).

[91] See *Fidel*, 534 F.3d at 514.

as updated through databases such as Lexis/Nexis and/or Accurint. Within 28 days from the date of Preliminary Approval, Rust Consulting will update the addresses provided by Unum and mail the notice to all putative settlement class members. The mailings will be completed no later than 70 days before the Final Approval Hearing. Additionally, Rust Consulting will establish a website containing the notice, the Settlement Agreement and other relevant information. It will also establish a toll-free hotline for interested persons to call with inquiries. The notice additionally provides that any putative class members wishing to opt-out of the settlement class must notify class counsel, who will then aggregate these objections and file them onto the record at the end of the opt-out period.[92]

The Court finds that the proposed method of notice satisfies the requirements of Rule 23(c)(2)(B) and due process. The direct mailing of notice, along with publication of the notice and

---

[92] *See* Rec Doc. 46.

Settlement Agreement on the web, is reasonably calculated to apprise class members of the settlement. Therefore, the Court approves the proposed notice[93] and the plan for providing notice.

### V. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that the parties' joint "Motion to Preliminarily Approve the Class Settlement, Conditionally Certify the Settlement Class, Direct Notice to the Class, and Schedule a Final Approval Hearing"[94] is **GRANTED.** A detailed procedural order will be issued in conjunction with this opinion.

**IT IS FURTHER ORDERED** that this preliminary approval is subject to further consideration at a Final Approval Hearing, which shall be held on November 6, 2015.

**NEW ORLEANS, LOUISIANA**, this __6th__ day of July, 2015.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[93] *Id.*

[94] Rec. Doc. 32.

22