**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MARY J. KEMP** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 14-0944** |
| **UNUM LIFE INSURANCE COMPANY OF AMERICA** | **SECTION: "G" (3)** |

## ORDER

Plaintiff Mary J. Kemp ("Kemp"), with the support of Defendant Unum Life Insurance Company of America ("Unum"), moves the Court to grant final approval of a class action settlement pursuant to Federal Rule of Civil Procedure 23. Before the Court is Plaintiff's and Class Counsel's unopposed "Motion for Final Approval of Class Settlement, Application for Service Award, and Application for Attorneys' Fees and Expenses."[1] Having considered the motion, the memorandum in support, the record, the statements made at the November 5, 2015 fairness hearing, the Settlement Agreement,[2] and the applicable law, the Court will grant the motion.

## I. Background

### A.    *Factual Background*

Mary Kemp worked as a sales associate for Humana, Inc. ("Humana") from 2006 until June 2012, when she was forced to stop working due to a disability.[3] She applied for short and long term disability benefits under a group plan offered by Humana for its employees.[4] Humana purchased a

---

[1]  Rec. Doc. 49.

[2]  Rec. Doc. 51-5.

[3]  Rec. Doc. 49-3 at p. 2.

[4]  *Id.*

1

group insurance policy (the "Policy"), issued on May 1, 2012, from Unum to fund the long term disability plan.[5] Unum retained discretionary authority to make benefit determinations, including determining "the amount of benefits" under the Policy.[6] After receiving short-term disability benefits for the maximum benefit period, Kemp applied for long-term disability benefits.[7] In January 2013, Unum approved her claim and paid her benefits for several months.[8] Unum terminated her benefits on May 6, 2013.[9]

In this lawsuit, Kemp contests both the denial of her disability benefits and also the amount that Unum had been paying her each month.[10] The pending class settlement resolves only the latter claim.[11] Kemp alleges that the amount of her disability benefit was too low because "perpetuity payments" – a set amount paid by Humana to Kemp each month for so long as customers to which she sold certain insurance products remained with Humana – were not included as "monthly earnings" when Unum calculated her benefit amount.[12] Kemp argues that these perpetuity payments should have been included in the calculation of her benefit amount because they fall within the Policy's definition of "monthly earnings," as follows:[13]

---

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

> Monthly earnings means your total income in effect just prior to your date of disability. It is before taxes and any deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account. It includes your gross targeted sales incentive, divided by 12. It does not include income received from commissions, bonuses, overtime pay, shift differential, and any other extra compensation or income received form sources other than your Employer.[14]

Specifically, Kemp contends that an ordinary reading of "total income" includes perpetuity payments, and that perpetuity payments do not qualify as any of the excluded categories.[15]

## B.    *Procedural Background*

Kemp filed this lawsuit on April 25, 2014.[16] Pursuant to Local Rule 23(B)(1), which requires the filing of a motion for class certification within 91 days of filing the complaint, Kemp filed a motion for class certification on July 21, 2014.[17] Unum filed an opposition to the motion for class certification on September 9, 2014.[18] The parties participated in a ten-hour mediation on December 5, 2014, wherein they agreed on the material terms of a settlement, subject to confirmation of data provided by Unum regarding Unum's method of calculating disability benefits.[19]

On February 10, 2015, the parties filed a joint "Motion to Withdraw Document Class Certification Motion,"[20] which the Court granted on February 12, 2015.[21] Also on February 10, 2015,

---

[14] *Id.* at p. 3.

[15] *Id.*

[16] Rec. Doc. 1.

[17] Rec. Doc. 12.

[18] Rec. Doc. 17.

[19] Rec. Doc. 32-1 at p. 7.

[20] Rec. Doc. 34.

[21] Rec. Doc. 41.

the parties filed a joint "Motion to Preliminarily Approve the Class Settlement, Conditionally Certify the Settlement Class, Direct Notice to the Class, and Schedule a Final Approval Hearing,"[22] which this Court granted on July 6, 2015.[23] In that Order, the Court conditionally certified a settlement class, preliminarily approved the proposed settlement, and directed notice to the class.[24]

As required by the Court's July 6th Order, the settlement administrator, Rust Consulting ("Rust"), mailed direct-mail notices approved by the Court to all class members, updated the addresses for the eleven notices that were returned as undelivered, re-mailed notices to the eight persons for whom new addresses could be identified, and published the notice on a website created for the settlement.[25] Rust received zero opt-outs and zero objections.[26]

On October 19, 2015, Kemp and Class Counsel filed the pending motion for final approval of the settlement.[27] On November 5, the Court held a final approval and fairness hearing.[28]

## C.   *The Proposed Settlement Agreement*

### 1.   **The Proposed Settlement Class**

The proposed settlement agreement defines the Settlement Class as:

All current or former Humana employees who (1) received long-term disability benefits from Unum under the Policy; (2) became disabled within the meaning of the Policy between and including May 1, 2002, and October 31, 2013; (3) received

---

[22]  Rec. Doc. 32.

[23] Rec. Doc. 47.

[24] *Id.*

[25] Rec. Doc. 49-3 at p. 7.

[26] *Id.*

[27] Rec. Doc. 51.

[28] Rec. Doc. 52.

Perpetuity Payments from Humana; and (4) whose long-term disability benefit payment amount was calculated without including Perpetuity Payments as Monthly Earnings as defined in the Policy.

Excluded from this Settlement Class are all individuals and entities who have executed a release of claims on or before April 24, 2014, and all individuals and entities who submit timely and valid requests to be excluded from the Settlement Class pursuant to the terms of this Settlement Agreement and the Court's Preliminary Approval Order.[29]

"Perpetuity payments" is defined as "the payments made to certain Humana employees for each month that a member to whom the employee sells a Medicare Advantage or Medicare Prescription Drug Plan remains active."[30] The "Policy" is defined as "the group insurance policy, No. 137513 001, issued on May 1, 2002 by Unum to Humana to fund a portion of Humana's ERISA welfare benefit plan, as amended from time to time."[31]

## 2. The Settlement Agreement

Under the terms of the proposed Settlement Agreement, each class member will receive (1) his or her Back Benefit Settlement Amount, (2) plus his or her Future Benefit Monthly Settlement Amount for so long as he or she remains disabled within the meaning of the Policy, (3) less an allocation of (a) any attorneys' fees and expenses approved by the Court and (b) any service award approved by the Court.[32] Stated differently, for each month that he or she received benefits in the past and each month that he or she receives benefits in the future, each class member will receive half of the benefit increase that would result from inclusion of perpetuity payments as monthly

---

[29] Rec. Doc. 51-5 at p. 9.

[30] *Id.* at p. 6.

[31] *Id.*

[32] *Id.* at p. 11.

5

earnings when calculating his or her monthly benefit, plus interest at ten percent on back benefits, less an allocation of any attorneys' fees, costs, and expenses, and/or service awards approved by the Court. All class members will receive payment by check within 30 days of the effective date of the Settlement Agreement for payments due under the agreement, for the period up to and including the effective date.[33]

Attorneys' fees for class counsel and expenses will be calculated as a percentage of the Settlement amount, of up to one third of the Settlement Amount.[34]  Additionally, class counsel seek approval of a service award of $5,000 to the class representative, to be paid out of the Settlement Amount.[35]

The Agreement provides that it is intended to forever and completely release Unum from all "Released Claims," which are defined as:

> any and all past and present claims, actions, causes of action, rights or liabilities, known or Unknown, based on, arising out of, or in any way relating to inclusion or not of Perpetuity Payments when calculating the amount of the long-term disability benefits under the Policy. Without limiting the generality of the foregoing, the Released Claims include all claims, actions, rights or causes of action arising under the statutory or common law applicable to Settlement Class Members that were raised or could have been raised in this litigation, including any claims of violations of ERISA or state law, intentional wrongdoing, fraud, and/or breach of fiduciary duty. "Released Claims" do not include claims for improper denial or termination of benefits under ERISA § 502(a)(1)(B), except to the extent that any such claim seeks an increased benefit due to the inclusion or not of perpetuity payments when calculating the benefit amount.[36]

---

[33] *Id.* at p. 18.

[34] *Id.* at pp. 11–12.

[35] *Id.* at p. 11.

[36] *Id.* at p. 6.

**D.      *Notice***

Federal Rule of Civil Procedure 23(c)(3) governs the notice requirements for class certification. Specifically, the notice must state:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

After reviewing the notice here, the Court found in its preliminary approval order that it met the requirements of Rule 23(c)(3).[37] The Court also found that the proposed dissemination of the notice complied with Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified by reasonable effort" and met the requirements of Due Process.[38]

Pursuant to the terms of the Settlement Agreement, the parties selected and Unum retained Rust Consulting, Inc. ("Rust"), a class action notice expert, to serve as the Notice Administrator and the Settlement Administrator for this Settlement.[39] Class Counsel has provided evidence that the

---

[37] Rec. Doc. 48 at p. 19.

[38] *Id.* at p. 21.

[39] Rec. Doc. 32-1 at p. 9; Rec. Doc. 32-6 at ¶ 5.1.

notice was disseminated as planned.[40] According to Kemp, Rust compiled the last known addresses for each class member by using Unum's records and databases such as Lexis/Nexis and Accurint and mailed direct notice to all 109 class members.[41] The notice included a description of the Settlement, a date by which members of the Settlement Class could exclude themselves from, or "opt out" of the Settlement Class, a date by which the class members could object to the settlement, the date of the final approval hearing, and the address of the settlement website, at which class members could access the Agreement and other related documents and information.[42]

Eleven of the notices were returned as undeliverable, and Rust made a further attempt to update each address by using names, addresses, and social security numbers.[43] Rust obtained new addresses for eight of the eleven persons and remailed direct notice to them.[44] One of those eight notices was returned as undeliverable.[45] Thus, Rust estimates that the direct mail program reached over 96% of the class members, and notes that the notice was also publicly available at a website that Rust established.[46] According to Plaintiff, not a single class member opted out or objected.[47]

Thus, after reviewing evidence fo the actual dissemination of the notice by Rust, the Court confirms that the notice complies with the requirements of Rule 23 and Due Process.

---

[40] *See* Rec. Doc. 51-4.

[41] Rec. Doc. 51-1 at p. 12.

[42] Rec. Doc. 32-1 at p. 10; Rec. Doc. 46.

[43] Rec. Doc. 51-4 at p. 4.

[44] *Id.*

[45] Rec. Doc. 51-1 at p. 12.

[46] Rec. Doc. 51-4 at pp. 3–4.

[47] Rec. Doc. 51-1 at p. 12.

## II.  Class Certification

As a preliminary matter, Class Counsel seek final certification of the class in this case. For the reasons articulated in the Court's order conditionally certifying the class,[48] this Court finds that certification of the class, for settlement purposes only, is appropriate.

## III. Fairness Determination

### A.    *Legal Standard*

Federal Rule of Civil Procedure 23 governs the settlement of class actions.[49] A class action may not be dismissed or compromised without the district court's approval.[50] Before the Court approves a settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate."[51] The Court must "ensure that the settlement is in the interests of the class, does not unfairly impinge on the rights and interests of dissenters, and does not merely mantle oppression."[52] Because the parties' interests are aligned in favor of a settlement, the Court must take independent steps to ensure fairness in the absence of adversarial proceedings.[53] The Court's duty of vigilance does not, however, authorize it to try the case in the settlement hearings.[54]

---

[48] Rec. Doc. 48 at pp. 7–15.

[49] *See Henderson v. Eaton*, No. 01–0138, 2002 WL 31415728, *2 (E.D. La. 2002) (citing *Pearson v. Ecological Science Corp.*, 522 F.2d 171, 176–77 (5th Cir. 1975)).

[50] *See* Fed. R. Civ. P. 23(e); *see also Cope v. Duggins*, 203 F. Supp. 2d 650, 652–53 (E.D. La. 2002) (citing *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977)).

[51] Fed. R. Civ. P. 23(e)(1)(c); *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004).

[52] *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (quoting *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978)).

[53] *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279–80 (7th Cir. 2002) (noting that the class action context "requires district judges to exercise the highest degree of vigilance in scrutinizing proposed settlements"); *see also Manual for Complex Litigation* (Fourth) § 21.61 (2004).

[54]  *Cotton*, 559 F.2d at 1330.

A Court's decision to approve a particular settlement is discretionary and depends on multiple factors.[55] The Fifth Circuit has identified six factors that the Court should consider in assessing whether a settlement is fair, adequate, and reasonable: (1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles to plaintiffs prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members.[56]

**B.     *Analysis***

### 1.        Fraud or Collusion

There is no evidence that the settlement involves fraud or collusion. Class Counsel note that the proceedings were sharply contested and have been pending for more than two years, since Kemp first retained Class Counsel to pursue her claims in April 2013.[57] The parties have presented evidence that the settlement was the result of arm's length negotiations before Glenn Scott Love, an experienced mediator, who submitted a declaration stating that each party adamantly supported its positions during a ten-hour mediation session, submitted numerous offers and counter-offers, and expressed a willingness to litigate if an appropriate settlement could not be reached.[58] Class Counsel note that even after the parties agreed to the terms of the settlement, they insisted that Unum and

---

[55] *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004).

[56] *Newby*, 394 F.3d at 301; *Ayers*, 358 F.3d at 369; *Reed*, 703 F.2d at 172; *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982).

[57] Rec. Doc. 51-1 at p. 13 (citing *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 910 F. Supp. 2d 891, 931 (E.D. La. 2012) (finding that "any suggestion of fraud or collusion" was baseless since the "settlement was reached only after months of hard-fought negotiations")).

[58] *See* Rec. Doc. 51-3.

Humana provide documentation to verify the numbers that were used to mediate the dispute, in order to ensure that each class member would receive an accurate pro rata share.[59] Counsel stated at the final approval hearing that attorney fees were not negotiated until after the settlement of the class's claims had been agreed upon.[60]

"The Court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary."[61] Here, the Court has received no indication that the settlement is fraudulent, collusive, or that it unfairly discriminates among class members. Accordingly, the Court finds that this factor favors approval of the settlement.

## 2.      Complexity, Expense, and Likely Duration of Litigation

Under this factor, the Court considers whether settling now avoids the risks and burdens of potentially protracted litigation.[62] Class Counsel have represented that although this matter was actively pursued through administrative proceedings and litigations for approximately 20 months prior to reaching a preliminary settlement, continuing to litigate the case would require substantial additional expenses.[63] Class Counsel have submitted a declaration stating that litigating this matter has been difficult and time-consuming, and although they are confident in the strength of Kemp's

---

[59] Rec. Doc. 51-1 at p. 14.

[60] *See Manual for Complex Litigation, Fourth*, § 21.7 ("Although there is no bar to [lump sum settlements encompassing both class claims and attorney's fees], the simultaneous negotiation of class relief and attorney fees creates a potential conflict. Separate negotiation of the class settlement before an agreement on fees is generally preferable.").

[61] *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 725 (E.D. La. 2008) (Berrigan, J.).

[62] *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004).

[63] Rec. Doc. 51-1 at p. 14.

case, continued litigation carries inherent risks.[64]

Class action litigation is inherently complex, and complex litigation is inevitably costly in terms of both time and money.[65] Therefore, the Court finds that settlement avoids consuming additional judicial and attorney time and resources, and avoiding such costs weighs in favor of settlement.

### 3.    Stage of Proceedings and Amount of Discovery Completed

In evaluating proposed settlements, courts consider whether the parties have "obtained sufficient information to evaluate the merits of the competing positions"[66] and whether they have obtained sufficient information "about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed."[67] Neither extensive formal discovery nor a voluminous record is required before settlement.[68] However, the parties must have gathered sufficient data on the claims at issue to support the factual bases on which a settlement is premised.[69]

Class Counsel have submitted that, prior to even filing the class action, they interviewed several potential class members, reviewed extensive plan documentation and payroll data, and

---

[64] Rec. Doc. 51-6 at p. 8.

[65] *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("It is common knowledge that class action suits have a well deserved reputation as being most complex.").

[66] *Ayers*, 358 F.3d at 369.

[67] *In re Educ. Testing Servs.*, 447 F. Supp. 2d 612, 620–21 (E.D. La. 2006) (Vance, J.).

[68] *Cotton*, 559 F.2d at 1332; *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981).

[69] *See Newby v. Enron Corp.* 394 F.3d 296, 306 (5th Cir. 2004); *In re Corrugated Container*, 643 F.2d at 211.

represented Kemp throughout Unum's internal appeals procedures.[70] In the course of the litigation, the parties exchanged financial data, affidavits, payroll forms, claims information for thousands of potential class members, and many other documents.[71] The information was then reviewed by Class Counsel and financial experts.[72] Furthermore, Class Counsel were especially familiar with the legal claims at issue, having previously litigated *Surratt v. Unum Life Insurance Company of America* before this Court, which included a legal dispute about the definition of "perpetuity payments" similar to the one at issue in this case.[73]

There is no indication that counsel for all parties are not experienced and familiar with the factual and legal issues in the case. The Court is satisfied that the parties were sufficiently informed to assess the strengths and weaknesses of their positions, and therefore this factor favors settlement.

### 4.    Factual and Legal Obstacles to Prevailing on the Merits

As noted above, this case includes several factual and legal similarities to a case already decided by this Court, *Surratt v. Unum Life Insurance Company of America.* In *Surratt*, this Court held that "perpetuity payments," at issue in this dispute, should be considered as part of the plaintiff's "monthly earnings" and thereby increased her disability benefits.[74] Despite the similarity of the issues presented, however, Class Counsel argue that Unum was prepared to present legal and

---

[70] Rec. Doc. 51-1 at p. 15.

[71] *Id.* at p. 16.

[72] *Id.*

[73] *Surratt v. Unum Life Ins. Co. of Am.*, No. 11-2943, 2013 WL 4648460 (E.D. La. Aug. 29, 2013) (Brown, J.).

[74] *Id.* at *7–8.

13

factual arguments that were not raised in *Surratt*.[75] Class Counsel maintain that although they believe they could succeed on their claims at trial, if the Court agreed with Unum's arguments in the instant case, Plaintiff could have been precluded from recovering any additional disability benefits.[76] Class Counsel also present an affidavit from the mediator attesting that the proposed settlement is a reasonable result in light of the risks and potential rewards of continued uncertain litigation.[77]

Despite the similar underlying factual scenarios, the Court agrees that the decision in *Surratt*, which was based on a different factual record and decided in light of different legal arguments than the ones proposed here, did not guarantee a certain outcome in the instant matter. In addition to the legal and factual disputes noted by Class Counsel, the putative class would face the usual hurdles of class action litigation, including prevailing on a motion for class certification and any potential interlocutory appeals of such an order, defending against a motion for summary judgment, and prevailing at trial. Thus, considering the risks Kemp faces in prevailing at trial, even considering the previous, favorable decision from this Court in *Surratt*, the probability of success factor favors approval of the settlement.

### 5. Range of Possible Recovery and Certainty of Damages

Unlike many class actions, the range of possible damages in this case is easily ascertainable. Here, class members agree to receive, for each month that they received benefits in the past and each month that they will receive benefits in the future, half of the benefit increase that would result from

---

[75] Rec. Doc. 51-1 at p. 17.

[76] *Id.*

[77] Rec. Doc. 51-3 at p. 7.

inclusion of perpetuity payments as monthly earnings when calculating their monthly benefits, plus 10 percent on back benefits, less an allocation of any attorney fees, costs, and expenses, as well as any service award approved by the Court.[78] Thus, the Settlement Agreement places the class's recovery squarely in the middle of the possible range of outcomes. Furthermore, Class Counsel assert that the percentage of recoverable damages is in fact even higher than 50% in light of the fact that Unum has agreed to pay the costs associated with Class Notice and Settlement Administration separately.[79]

"[C]ompromise is the essence of a settlement."[80] "[I]nherent in compromise is a yielding of absolutes and an abandoning of highest hopes."[81] Class Counsel have submitted declarations from both themselves and the mediator stating that, in light of their experience litigating similar claims, the recovery obtained is a significant achievement.[82] This Court may rely on the representations of counsel in considering whether the compromise represents a desirable resolution given the possible range of recovery.[83] In light of Class Counsel's representations and an absence of evidence suggesting that the proposed settlement is inadequate, the Court finds that this factor weighs in favor of settlement.

      **6.**    **Opinions of Class Counsel, Class Representatives, and Absent Class Members**

---

[78] Rec. Doc. 51-6 at p. 5.

[79] Rec. Doc. 51-1 at p. 18.

[80] *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)

[81] *Id.* (quoting *Milstein v. Werner*, 57 F.R.D. 515, 524–25 (S.D.N.Y. 1972)).

[82] Rec. Docs. 51-3, 51-6.

[83] *See Cotton*, 559 F.2d at 1330 ("Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.").

As far as the Court is aware, the opinions of the affected parties are uniformly in favor of the settlement. Class Counsel and Lead Plaintiff have both expressed their approval of the settlement,[84] Defendant did not oppose the settlement and indicated approval at the final approval hearing, and no objections or opt-outs have been received by Class Counsel.[85] With a total class size of only 109, the Court is reluctant to infer too much from a lack of objectors or opt-outs, but the fact that no one has stepped forward to criticize the settlement suggests class-wide support for the proposal.[86] In addition, district courts in the Fifth Circuit often accord great weight to the stated opinion of class counsel,[87] and the Court finds that doing so is appropriate here. Therefore, this factor also weighs in favor of settlement.

### 7.   Conclusion

Because all of the factors weigh in favor of settlement, the Court finds the settlement to be fair, reasonable and adequate under Rule 23(e)(1)(C) of the Federal Rules of Civil Procedure.

### IV. Application for Service Award

Courts "commonly permit payments to class representatives above those received in settlement by class members generally."[88] In deciding whether an incentive award is warranted,

---

[84] Rec. Docs. 51-6 at p. 10; 51-7 at p. 2.

[85] Rec. Doc. 51-1 at p. 20.

[86] *See In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, 2009 WL 512081, at *15 (E.D. La. Mar. 2, 2009) (Vance, J.).

[87] *See, e.g.*, *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 852 (E.D. La. 2007) (Fallon, J.) ("Class counsel's opinion should be presumed reasonable because they are in the best position to evaluate fairness due to an intimate familiarity with the lawsuit."); *see also Newby v. Enron Corp.*, 394 F.3d 296, 309 (5th Cir. 2004) ("[T]he weight the district court attached to the opinions of class counsel . . . was justified in light of their superior sophistication.").

[88] *Turner*, 472 F. Supp. 2d at 870 (quoting *Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 367–68 (S.D. Miss. 2003)).

courts may consider a number of factors, such as: (1) the actions the plaintiff took to protect the interests of the class; (2) the degree to which the class benefitted from those actions; and (3) the amount of time and effort the plaintiff expended in pursuing the litigation.[89] Pursuant to the Settlement Agreement, Class Counsel seek a $5,000 Service Award to Kemp, the named Plaintiff, to compensate her for her assistance in this matter, namely submitting to numerous interviews with Class Counsel, locating and forwarding responsive documents and information, and participating in conferences and an all-day mediation with Class Counsel.[90] At the final approval hearing, Class Counsel noted that such incentive awards are a common way to battle the "free-rider" problem, whereby potential plaintiffs may be hesitant to come forward because all class members recover equally regardless of whether they help with litigation efforts. Here, Class Counsel seek $5,000 as a service award, which amounts to less than 00.2% of the $3,738,402 settlement amount.[91] Courts within the Fifth Circuit have approved similar incentive awards, and even much larger ones, calculated as a percentage of the total settlement recovery.[92]

Thus, in light of the considerable time and effort expended by Kemp in pursuing this litigation, and in keeping with the average compensation often awarded for those efforts within the Fifth Circuit, the Court finds a $5,000 Service Award is reasonable and shall be paid to Kemp from

---

[89] *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012).

[90] Rec. Doc. 51-1 at p. 22.

[91] Rec. Doc. 51-6 at p. 11.

[92] *See Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 306 (S.D. Miss. 2014) (approving requested service awards of $5,000 apiece to seven named plaintiffs from a total settlement fund of $4,000,000); *Quintanilla v. A & R Demolition Inc.*, No. 04-1965, 2008 WL 9410399, at *3 (S.D. Tex. May 7, 2008) (approving a $1,000 incentive award from a total settlement fund of $400,000); *Camp v. Progressive Corp.*, No. 01-2680, 2004 WL 2149079, at *7 (E.D. La. Sept. 23, 2004) (Wilkinson, M.J.) (awarding a total of $102,000 in incentive payments from a total settlement fund of $5,400,000).

the total settlement fund.

## V. Attorney Fees and Expenses

Class counsel requests attorneys' fees of one third of the $3,738,402 Settlement Fund, as well as the reimbursement of out-of-pocket expenses totaling $17,878.65.[93] The Court must independently analyze the reasonableness of the proposed attorney fees.[94]

The Court has various methods at its disposal for determining an appropriate attorney fee. "In common fund cases, courts typically use one of two methods for calculating attorneys' fees: (1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier."[95] In *Union Asset Management Holding A.G. v. Dell, Inc.*, the Fifth Circuit endorsed district courts' use of either the percentage or lodestar method, so long as courts continue to utilize the twelve-factor framework set forth in *Johnson v. Georgia Highway Express, Inc.*[96]

---

[93] Rec. Doc. 51-1 at p. 23.

[94] *See Strong v. BellSouth Telecomm., Inc.*, 137 F.3d 844, 849–50 (5th Cir. 1998).

[95] *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642–43 (5th Cir. 2012).

[96] *Id.* at 644 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717, 720 (5th Cir. 1974)). In *Perdue v. Kenny A. ex. rel. Winn*, 559 U.S. 542, 550–51 (2010), the Supreme Court noted that the *Johnson* factors were "[o]ne possible method" for determining reasonable attorney fees, but that the factors "gave very little actual guidance to district courts. Setting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results." Since *Perdue*, however, the Fifth Circuit and the Eastern District of Louisiana have continued to weigh the *Johnson* factors when considering whether to decrease or enhance the lodestar. *See, e.g., Ransom v. M. Patel Enters., Inc.*, 734 F.3d 377, 388 (5th Cir. 2013); *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013); *Altier v. Worley Catastrophe Response, LLC*, 11-241, 2012 WL 161824 at *22 (E.D. La. Jan. 18, 2012). Accordingly, this Court does the same.

The Court must ensure that attorney fees are "reasonable."[97] Here, Class Counsel urge the Court to use the 1/3 percentage as a benchmark, noting that the attorney fee award was agreed upon in the Settlement Agreement, that the contract of representation signed with Class Counsel by Kemp provided for a 1/3 attorney fee, and that significant Fifth Circuit precedent supports the award.[98] The Court notes that attorney fees awarded as percentages of a common fund usually range between 20 and 30%, with 50% as an upper limit.[99] In the Fifth Circuit, the average percent awarded as attorneys' fees is 29.5%.[100] Furthermore, "it is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third."[101]

Here, the Court agrees that the agreed-upon attorney fee award of 1/3 of the total settlement fund falls within the range of awards granted by courts within the Fifth Circuit and is a reasonable benchmark. Next, the Court considers whether any of the twelve factors set forth in *Johnson* would recommend either an upward or downward departure from the 1/3 benchmark.

## A.   **Johnson** *Factors*

"The *Johnson* factors are intended to ensure 'a reasonable fee .'"[102] In determining whether an attorney fee award is reasonable, and whether an upward or downward adjustment is warranted, courts consider the following factors: (1) the time and labor required to represent the client or

---

[97] Fed. R. Civ. P. 23(h).

[98] Rec. Doc. 51-1 at p. 26.

[99] *Newberg on Class Actions* § 15:83 (5th ed.).

[100] *Id.*

[101] *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 729 (E.D. La. 2008) (Berrigan, J.) (citing *In re Harrah's Entm't, Inc.*, No. 95-3925, 1998 WL 832574, at *4 (E.D. La. Nov. 25, 1998)) (comparing cases).

[102] *In re Harrah's Entm't, Inc.*, 1998 WL 832574, at *4 (Clement, J.) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974)).

clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[103]

### 1.      Time and Labor Required

"Although hours claimed or spent on a case should not be the sole basis for determining a fee . . . they are a necessary ingredient to be considered."[104] Class Counsel claim that they have spent more than 1023 hours litigating the class claims in the instant suit, and anticipate spending a substantial amount of additional time overseeing the distribution of settlement funds, fielding calls from class members, and other administrative duties arising from the settlement.[105] Given the significant efforts expended on the litigation, this factor suggests that the suggested attorney award is reasonable.

### 2.      The Novelty and Difficulty of the Issues

The second *Johnson* factor allows more substantial attorney fees when the legal or factual issues involved are ones of "first impression."[106] Class Counsel aver that this action involved novel

---

[103] *Johnson*, 488 F.2d at 717–20.

[104] *Id.* at 717 (citation omitted).

[105] Rec. Doc. 51 at p. 28.

[106] *Johnson*, 488 F.2d at 718.

and difficult issues of both law and fact.[107] Relying on declarations from Reagan Toledano, one of the attorneys involved in the matter, and two uninvolved attorney specializing in ERISA litigation, Class Counsel contend that Plaintiff put forward several novel legal arguments that required extensive research and specialized knowledge.[108] The Court noted at the Final Approval Hearing that some of the issues involved in this case were decided by this Court in a prior matter involving the same attorneys.[109] However, Class Counsel averred that the instant litigation involved more sophisticated arguments by the Defendant and more complex facts. In light of the evidence presented, the Court finds that the second *Johnson* factor favors a substantial fee award in this case.

### 3. Skill Required to Perform the Legal Service Adequately

In evaluating the third *Johnson* factor, the "trial judge should closely observe the attorney's work product, his preparation, and general ability before the court."[110] Here, Class Counsel "humbly submits" that its work product, preparation and ability weigh in favor of a substantial fee award.[111] The Court finds that the legal services provided in pursuit of this litigation have been adequate and weigh in favor of the requested fee award.

### 4. Preclusion of Other Employment by the Attorney

"This guideline involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once

---

[107] Rec. Doc. 51 at p. 28.

[108] *Id.* at pp. 29–30.

[109] *See Surratt v. Unum Life Ins. Co. of Am.*, No. 11-2943, 2013 WL 4648460 (E.D. La. Aug. 29, 2013) (Brown, J.).

[110] *Johnson*, 488 F.2d at 718.

[111] Rec. Doc. 51-1 at p. 31.

the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes."[112] Class Counsel aver that for prolonged periods of time, work on the instant matter required "almost exclusive attention" and that work on the case spanned for approximately two and a half years.[113] The Court finds that the fourth *Johnson* factor therefore weighs in favor of the requested fee award.

### 5.      The Customary Fee

"The customary fee for similar work in the community should be considered."[114] Class Counsel provide declarations stating that experienced ERISA practitioners charge hourly rates that, when adjusted by a reasonable multiplier and compared to the fee award in this case, yield similar results.[115] Therefore, this factor also weighs in favor of a one-third fee award.

### 6.      Whether the Fee Is Fixed or Contingent

"The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case."[116] "This factor considers the financial risks a contingency fee arrangement places on counsel."[117] Class Counsel aver that they undertook representation of Kemp on a contingency basis at the rate of 1/3.[118] Therefore, although

---

[112] *Johnson*, 488 F.2d at 718.

[113] Rec. Doc. 51-1 at p. 32.

[114] *Johnson*, 488 F.2d at 718.

[115] Rec. Doc. 51-1 at p. 33.

[116] *Johnson*, 488 F.2d at 718.

[117] *In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, 2009 WL 512081, at *21 (E.D. La. Mar. 2, 2009) (Vance, J.) (citing *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 791 (S.D. Tex. 2008)).

[118] Rec. Doc. 51-1 at p. 33.

the Fifth Circuit in *Johnson* warned that any fee agreed upon should not determine the Court's decision,[119] the Court finds that the parties' agreement, and the risks involved in taking a case on a contingency basis, is another factor weighing in favor of the reasonableness of the requested fee award.

### 7. Time Limitations Imposed by the Client or the Circumstances

"Priority work that delays the lawyer's other legal work is entitled to some premium."[120] This factor is similar to the fourth factor, concerning whether the instant litigation precluded the attorneys involved from taking on other work. Class Counsel reiterates that there were numerous periods of time during the instant litigation in which they prioritized this case over other work.[121] Therefore, the Court considers the two factors to overlap, and that they both support the requested award.

### 8. The Amount Involved and the Results Obtained

"The most critical factor in determining a fee award is the 'degree of success obtained.'"[122] Class Counsel contends that the result achieved in this case was "excellent," noting that the settlement represents half of the relief sought in the action, significantly benefits all class members, and provides that Unum will pay all the costs of notice.[123] As noted above, the Court has already found that the proposed settlement is "fair, reasonable, and adequate," and Class Counsel reiterates

---

[119] *See Johnson*, 488 F.2d at 718.

[120] *Id.*

[121] Rec. Doc. 31-1 at p. 34.

[122] *Romaguera v. Gegenheimer*, 162 F.3d 893, 896 (5th Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

[123] Rec. Doc. 31-1 at pp. 34–35.

that there have been zero opt-outs or objections to the settlement.[124] The Court therefore finds that the requested fee award is reasonable in light of the overall merits of the settlement.

### 9. The Experience, Reputation, and Ability of the Attorneys

"Most fee scales reflect an experience differential with the more experienced attorneys receiving larger compensation. . . . Longevity *per se*, however, should not dictate the higher fee."[125] Here, Class Counsel "humbly suggests" that the declarations filed in this matter provide evidence that the experience, reputation, and ability of Class Counsel favor a substantial award in this case.[126] The Court notes that this factor substantially overlaps with the third *Johnson* factor, concerning the level of skill required to litigate the case. As above, the Court finds that the experience, reputation and ability of the attorneys are satisfactory and favor the requested attorney fees.

### 10. The "Undesirability" of the Case

Class Counsel avers that the case was "undesirable" because Class Counsel is a "small group of attorneys pitted against one of the largest disability insurance companies in the nation, and they have handled this matter on a contingency basis for approximately 2 ½ years, bearing the many risks of the litigation."[127] Class Counsel contends that there was a significant risk in the case that the class would not be certified or that Kemp would lose on the merits.[128] The Court agrees that these factors increased the difficulty and undesirability of the case, and finds that this factor supports the requested attorney fees.

---

[124] *Id.* at 35.

[125] *Johnson*, 488 F.2d at 718–19.

[126] Rec. Doc. 51-1 at p. 35.

[127] *Id.* at p. 36.

[128] *Id.*

### 11.      The Nature and Length of the Professional Relationship with the Client

"A lawyer in private practice may vary his fee for similar work in the light of the professional relationship of the client with his office."[129] As noted above, Class Counsel has represented the class representative in this matter for two and a half years. The class representative, Kemp, filed a declaration stating that her attorneys were "very attentive," "provided quick answers to [her] questions," and kept her updated throughout the matter.[130] Kemp also stated that her attorneys acted aggressively and in the best interest of both her and the class.[131] As such, the relationship between Class Counsel and their client supports a one-third attorney fee in this case.

### 12.      Awards in Similar Cases

"The reasonableness of a fee may also be considered in the light of awards made in similar litigation within and without the court's circuit."[132] As already noted above, a one-third fee is within the customary range awarded by courts in similar cases. Thus, the Court finds that an award of one third of the settlement amount is reasonable and typical, and supports the requested fee in this case.

### 13.      Conclusion

In sum, the Court finds that none of the *Johnson* factors would require the Court to apply a downward adjustment to the benchmark, and overall they support Class Counsel's requested fee award, in light of the difficulties in litigating the case, the skill and expertise of the counsel involved, the result ultimately obtained, and the fees or awards typically obtained in similar cases.

---

[129] *Johnson*, 488 F.2d at 719.

[130] Rec. Doc. 51-7 at ¶ 6.

[131] *Id.*

[132] *Johnson*, 488 F.2d at 719.

**B.      Costs**

Finally, Class Counsel request reimbursement for a total of $17,878.65 in litigation expenses.[133] Class Counsel have submitted declarations itemizing the expenses,[134] and the Court notes that such reimbursement is typical in the settlement of class actions.[135] The Court has reviewed the requests expenses and finds them reasonable. Therefore, the Court awards the full amount in addition to the percentage fee.

### V. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff and Class Counsel's "Unopposed Motion for Final Approval of Class Settlement, Application for Service Award, and Application for Attorneys' Fees and Expenses"[136] is **GRANTED.**

**NEW ORLEANS, LOUISIANA**, this ____11th____ day of December, 2015.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[133] Rec. Doc. 51-1 at p. 41.

[134] Rec. Docs. 51-6, 51-10.

[135] *See In re OCA, Inc. Sec. & Derivative Litig.*, 05-2165, 2009 WL 512081, at *26 (E.D. La. Mar. 2, 2009); *Turner v. Murphy Oil U.S.A.*, 472 F. Supp. 2d 830 (E.D. La. 2007).

[136] Rec. Doc. 51.